IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KAREN RENEE PRESTON, )<br>  Plaintiff, )<br> ) | Civil No. 7:19-cv-00243 |
| v. ) ) | By: Michael F. Urbanski |
| BRIAN ROBERT GRIMES, )<br>WALMART TRANSPORTATION, )<br>LLC, and JOHN DOE, )<br>  Defendants. ) | Chief United States District Judge |

### MEMORANDUM OPINION

This matter is before the court on defendant's—Walmart Transportation, LLC ("Walmart")—motion to strike plaintiff Karen Renee Preston's experts Matthew Dwyer, Dr. Gregory Jay, and Dr. George Lazarou. Mot. to Strike, ECF No. 54. Preston opposes the motion, ECF No. 64; Walmart filed a reply, ECF No. 69; and, with leave from the court, Preston filed a sur-reply, ECF No. 76. The court heard argument on April 1, 2021. For the reasons explained herein, the court will **DENY IN PART** the motion as to Dwyer, **TAKE UNDER ADVISEMENT IN PART** the motion as to Jay, and **GRANT IN PART** the motion as to Lazarou.

   I.   Background

Preston was driving a Franklin County Public Schools bus on her usual daily route when a tractor-trailer driven by Grimes slammed into the front driver's side of the bus. Compl., ECF No. 1-1 at ¶¶ 2–6. The tractor-trailer is owned by and registered to Wal-Mart. Id. at ¶ 1. Preston filed a two-count negligence action against Grimes, Wal-Mart, and John Doe in the state circuit court for Franklin County. Id. at 1–5. Grimes and Wal-Mart removed

the action to this court on March 15, 2019, which has diversity jurisdiction pursuant to 28 U.S.C. §§ 1441 and 1446, as Preston is domiciled in Virginia, Grimes is domiciled in North Carolina, and Wal-Mart is incorporated in Delaware and maintains its principal place of business in Arkansas. ECF No. 1 at 1–3.

A jury trial for this case was originally set to begin on May 18, 2020. Scheduling Order, ECF No. 8. The court's scheduling order stated:

> [T]he plaintiff must submit the written report of each expert not later than seventy-five (75) days from the date of this order, and the defendant must submit the written report of each expert no later than ninety (90) days from the date of this order. Supplemental and additional reports may be thereafter submitted, if submitted in sufficient time that discovery, if desired, can be completed reasonably by the discovery cutoff date without undue duplication and expense.

Id. at 4. On June 6, 2019, the parties entered into a written discovery plan which amended these deadlines and stipulated that: (1) the plaintiff would disclose her experts no later than 150 days prior to trial or December 20, 2019; (2) the defendants would disclose their experts no later than 120 days prior to trial or January 17, 2020; and (3) "[a]ny rebuttal experts shall be disclosed no later than 90 days prior to the scheduled trial date or February 14, 2020." Discovery Plan, ECF No. 9, at 1. The trial was subsequently rescheduled to begin on March 1, 2021. ECF No. 17. On January 17, 2020, the court entered an amended scheduling order, directing (1) the plaintiff to supplement any expert disclosure or provide any additional expert disclosure no later than April 1, 2020; and (2) the defendants to do the same no later than May 1, 2020. Am. Scheduling Order, ECF No. 18. The amended scheduling order did not mention "rebuttal" experts or other deadlines. Id. On September 1, 2020, trial was delayed again to June 28, 2021. ECF No. 30.

On January 6, 2021, and January 11, 2021, defendants Walmart and Brian Robert Grimes filed two supplemental expert discovery reports. ECF Nos. 38, 41. The first supplemental report, by previously-disclosed expert Steven B. Chewning, explains that Chewning is expected to testify about the impact of the sun's position at the time of the collision based on his observations and photographs from the scene of the accident. ECF No. 38. The second supplemental report, by previously-disclosed expert Dr. Mark Sochor, explains that Sochor is expected to testify about an additional inspection of the school bus, with and without a surrogate, and his analysis of Preston's shoulder movement and displacement during the accident. ECF No. 41.

On February 12, 2021, Preston designated three new experts who "may provide rebuttal expert testimony at trial." ECF No. 45 at 1. These experts are Matthew Dwyer, a forensic crash reconstructionist; Gregory Jay, MD, Ph.D., a biomechanical engineer and board-certified medical doctor specializing in emergency medicine, engineering, and orthopedics; and George Lazarou, MD, FACOD, FACS, a board-certified surgeon specializing in urogynecology and reconstructive pelvic surgery.

On March 4, 2021, Walmart filed a motion to strike these experts, arguing that they were not rebuttal experts at all but experts supporting Preston's case in chief and, since they were disclosed a full 10 months after Preston's April 1, 2020, deadline for disclosing expert witnesses, the court should strike them. Mem. in Supp., ECF No. 55.

## II. Legal Standard

The Federal Rules of Civil Procedure define rebuttal evidence as "evidence…intended solely to contradict or rebut evidence on the same subject matter

3

identified by another party under Rule 26(a)(2)(B) or (C)." Fed. R. Civ. P. 26(a)(2)(D)(ii); see also United States v. Byers, 649 F.3d 197, 213 (4th Cir. 2011) ("Rebuttal evidence is defined as evidence given to explain, repel, counteract, or disprove facts given in evidence by the opposing party" or "that which tends to explain or contradict or disprove evidence offered by the adverse party"). "Permissible rebuttal evidence also includes evidence unavailable earlier through no fault of the plaintiff." Allen v. Prince George's Cnty., Md., 737 F.2d 1299, 1305 (4th Cir. 1984). A party "may not use rebuttal as an attempt to introduce evidence that he should have introduced in his case-in-chief." Steele v. Kenner, 129 F. App'x 777, 780 (4th Cir. 2005). "The plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from an affirmative defense) must put in his evidence on the issue as part of his case in chief." Wise v. C. R. Bard, Inc., No. 2:12-cv-01378, 2015 WL 461484, *2 (S.D. W. Va. Feb. 3, 2015).

"A party must make [expert] disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). "Absent a stipulation or a court order, the disclosures must be made…at least 90 days before the date set for trial[.]" Fed. R. Civ. P. 26(a)(2)(D)(i). "Rule 26 disclosures are often the centerpiece of discovery in litigation that uses expert witnesses. A party that fails to provide these disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case." Saudi v. Northrop Grumman Corp., 427 F.3d 271, 278–79 (4th Cir. 2005). "If a party fails to ... identify a witness as required by Rule 26(a)…the party is not allowed to use that…witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). A

4

court may excuse a party's failure to disclose experts in a timely manner upon consideration of the following factors:

> (1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony.

Southern States Rack & Fixture, Inc. v. Sherwin–Williams Co., 318 F.3d 592, 596 (4th Cir. 2003) (citations and quotations omitted). "A district court has 'particularly wide latitude' to exercise its discretion to exclude expert witness testimony proffered by a party that has failed to meet the disclosure requirements imposed by Fed. R. Civ. P. 26(a)." Scott v. Clarke, 3:12-CV-00036, 2014 WL 5386882, at *1 (W.D. Va. Oct. 22, 2014) (citing Saudi, 427 F.3d at 279). A court may also impose sanctions under Federal Rule Civil Procedure ("Rule") 16(f) should a party fail to comply with its own negotiated discovery plan. Akeva L.L.C. v. Mizuno Corp., 212 F.R.D. 306, 309 (M.D.N.C. 2002) (explaining the difference between Rule 16(f) and Rule 37(c)); see also Thompson v. U.S., 7:14-CV-00092, 2015 WL 2412249, at *4 (W.D. Va. May 21, 2015) (same).[1]

### III. Analysis

Preston does not dispute that she was required to disclose additional experts supporting her case in chief by January 29, 2021, at the latest. The court's Amended Scheduling Order instructed "the plaintiff to supplement any expert disclosure or provide any additional expert disclosure no later than April 1, 2020." ECF No. 18. Trial was subsequently delayed and, under the parties' earlier discovery plan, Preston was required to

---

[1] "Practically, it makes little difference which is the applicable Rule because the test for both rules is substantially the same." Scott v. Holz-Her, U.S., Inc., CIV. 6:04CV00068, 2007 WL 3171937, at *1 n. 1 (W.D. Va. Oct. 26, 2007).

disclose experts supporting her case in chief 150 days prior to trial, or by January 29, 2021. ECF No. 9 at 1; see also Mem. in Supp., ECF No. 55, at 8. Instead, she disclosed them on February 12, 2021. Pl.'s Rebuttal Expert Disclosure, ECF No. 45. The parties dispute the date by which Preston was required to disclose rebuttal experts. Accordingly, the court must answer three questions in ruling on Walmart's motion to exclude Preston's new experts: (1) are the new experts true rebuttal experts; (2) if so, were they timely disclosed; and (3) if untimely, is the late disclosure of these three additional experts substantially justified or harmless? The court will address these questions in reverse order.

### A. There Is No Good Cause or Substantial Justification for An Untimely Disclosure.

As a preliminary matter, the court notes that there is no good cause nor a substantial justification for any untimely disclosure by Preston. Walmart has little ability to cure its surprise because trial is in three months, its discovery period just closed, and its experts were unable to consider this evidence prior to providing their deposition testimony. Preston's provides no justification for failing to name the witnesses earlier, arguing only that they are rebuttal experts. Indeed, Walmart alleges that Preston intentionally waited until after deposing all of Walmart's witnesses to disclose these new experts, "thereby ensuring that Walmart would not have the opportunity to respond" and "[s]uch gamesmanship should not be rewarded." ECF No. 55 at 10. At no point does Preston even attempt to argue that any late disclosures on her part are justified. Accordingly, the court finds no justification for any late disclosures by Preston.

### B. If Preston's New Experts Are Truly Rebuttal Experts, They Were Timely Disclosed.

Though a later disclosure would be without justification, Preston's disclosures are timely if her experts are, in fact, rebuttal experts. In its reply, Walmart argues, even if the new experts are rebuttal experts, (1) Rule 26(a)(2)(D)(ii) governs; (3) Preston was required to disclose her experts in rebuttal within 30 days of the defendants' expert disclosures, or by July 1, 2020; and (3) she failed to do so until more than seven months later, on February 12, 2021. ECF No. 69 at 5. Preston argues that the parties' discovery plan applies and her disclosures are timely since they were made more than 90 days prior to trial. Though the court issued an intervening order regarding expert disclosures, the trial date was later moved again and nothing in the court's intervening order expressly addresses the parties' agreement regarding the disclosure of rebuttal experts. ECF No. 76 at 4–5. Given the many deadline changes in this case and the imprecise language of the court's intervening amended scheduling order, ECF No. 18, the parties' discovery plan should control and Preston's disclosures will be considered timely if the experts are indeed rebuttal experts.

### C. Dwyer and Jay are true rebuttal experts, but Lazarou is not.

#### i. Matthew Dwyer

Walmart argues that Dwyer, a forensic crash reconstructionist, is not a true rebuttal expert to its crash reconstructionist, Stephen Chewning. Mem. in Supp., ECF No. 55, at 4. Though Dwyer's report references Chewning's report, Walmart argues that Dwyer's analysis is nothing more than "interpretation of physical evidence which had always existed during the pendency of th[is] lawsuit[,]" including scratch marks and photographic evidence of the accident. Id. at 5 (citing Allen, 737 F.2d 1299). Walmart argues, "it should have been clear to [Preston] that she would need to designate an accident reconstruction expert to opine with

7

respect to how the collision occurred, how fast the tractor-trailer and the bus were going at the time of the collision, and where the vehicles ultimately came to a stop." Reply, ECF No. 69 (citing Compl., ECF No. 1, at ¶¶ 6–9).

Preston argues that Dwyer is clearly offered as a rebuttal expert to Chewning, as none of his testimony goes to Preston's prima facie case in chief. Mem. in Opp., ECF No. 64, at 2–3. Moreover, Dwyer's report directly responds to Chewning's report in four ways:

- First, Dwyer disputes Chewning's account of the gouge or scratch mark in the road, stating it was caused by the left front lower corner of the school bus's metal bumper rather than its stop arm;

- Second, Dwyer points out the inaccuracy of Chewning's measurements regarding where the tractor-trailer came to rest;

- Third, Dwyer contradicted Chewning's estimates of the speed of the tractor-trailer at the time of impact, concluding it was entirely possible the tractor-trailer was going 55 mph at impact; and

- Fourth, Dwyer critiques Chewning's methodology for calculating the delta-v and argues his conclusions are incorrect because the school bus must have experience a delta-v of more than 5 miles per hour since the passengers were thrown from their seats and the bus turned 42 degrees upon impact.

ECF No. 64 at 4–6. Overall, Preston argues that Dwyer's rebuttal of Chewning's opinions is direct and specific. Id. at 6.

The court agrees with Preston, finds that Dwyer is fairly disclosed as a rebuttal expert, and will **DENY** Walmart's motion to strike as it pertains to Dwyer.

### ii. Dr. Gregory Jay

Walmart argues that Jay—a biomechanical engineer and board-certified medical doctor specializing in emergency medicine, engineering, and orthopedics—is an injury causation expert who does not truly rebut any of its experts. Mem. in Supp., ECF No. 55, at

8

6. Walmart argues that Jay's report "is essentially his opinions as to the forces involved and has almost nothing to do with the opinions of Walmart's experts other than to declare that he reached a different conclusion." Id. In arguing that Jay's opinions should be excluded, Walmart cites Funderburk v. South Carolina Elec. & Gas Co., No. 3:15-CV-04660-JMC, 2019 WL 3406814, at *4 (D.S.C. Jul. 9, 2019), in which the court held that "expert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of the prior report, do not qualify as proper rebuttal or reply reports."

Preston argues she retained Jay to rebut the opinions of Drs. Nathan Guerette and Mark Sochor. She argues that her prima facie case did not require evidence regarding her risk factors for an overactive bladder, the amount of physical movement she experienced while restrained in the driver's seat during the collision, or a calculation of delta-v. From her perspective, these issues were introduced by Guerette and Sochor, and Jay rebuts them directly in three ways:

- First, Jay rebutted Guerette's opinion that her urinary incontinence was due to an overactive bladder and analyzed why he thought it was actually caused by the physical trauma she suffered during the collision;

- Second, Jay contradicted Sochor's assertion that Preston experienced minimal movement during the collision by providing an alternative analysis of physical evidence from the scene of the accident; and

- Third, Jay critiqued Sochor's methodology for calculating the delta-v of the school bus upon impact, using inertial calculations and noting that Preston's soft tissues injuries would have been caused by a delta-v of 17 mph.

ECF No. 64 at 6–9. Preston argues that these direct critiques clearly show that Jay is properly considered a rebuttal expert.

The court finds that Jay was fairly disclosed as a rebuttal expert. Preston provides direct and specific ways that he rebuts two of Walmart's experts. When faced with a similar dilemma, this court previously denied a motion to strike rebuttal experts even though "it was not a surprise that the predominant issue" in the case was injury causation because the plaintiff "was not required to anticipate the array of medical opinion evidence that [the defendant's expert] would marshal to undermine [the plaintiff's] initial expert report." Lupole v. U.S., 7:17-CV-00355, 2019 WL 4670899, at *2 (W.D. Va. Sept. 24, 2019). Like Lupole, Preston is not required to anticipate every expert opinion that could be offered against her. Jay—like Dwyer—seems to genuinely rebut Walmart's experts' opinions.

However, the court remains concerned by this late disclosure. Preston contacted Jay on June 16, 2020, about providing an expert opinion, but did not disclose his opinion until after Sochor's deposition on January 26, 2021. Though Preston's counsel stated at the hearing that this late disclosure may have been due to illness from COVID-19, the timing of that illness and the delayed disclosure do not fully align. The court finds no complete justification for the delay and, therefore, it will **TAKE UNDER ADVISEMENT** Walmart's motion to strike Jay pending subsequent briefing regarding his admissibility under Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993). The court's accompanying order will set deadlines for filing Daubert motions for Preston's rebuttal experts.

### iii. Dr. George Lazarou

Walmart also seeks to strike Dr. Greg Lazarou, who it refers to as Preston's "second urogynecology expert," ECF No. 55 at 2, as Preston previously designated Dr. William J. Greer as a urogynecology expert in December 2019. Pl.'s Expert Discovery Report, ECF

No. 11, at 8. Walmart argues that Lazarou's expert report does not directly contradict any of its experts. ECF No. 55 at 6. According to Walmart, the reports cannot be rebuttal reports because they did "not purport to even address the specifics of [the defendant's] experts' reports," and they did "not qualify as rebuttal." Id. at 7 (quoting WPS, Inc., v. Am. Honda Motor Co., Inc., No. 3:16-cv-2525-CMC, 2017 WL 4216159, at *3 (D.S.C. Sept. 22, 2017)). Instead, Lazarou offers an "evaluation of the injuries and damages" Preston suffered. Id. Walmart argues that this evidence is cumulative and improperly bolsters the opinions of Greer, one of Preston's seven previously disclosed physician witnesses. Id. at 7; see also Settle v. Stepp, No. 2:18-cv-01177, 2020 WL 5832000, at *2 (S.D. W. Va. Sept. 30, 2020) ("Bolstering occurs when the testimony's sole purpose is to enhance the credibility of a witness or source of evidence, without substantively contributing to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.").

Preston argues she retained Lazarou to rebut certain opinions given by Guerette. ECF No. 64 at 9. According to Preston, Lazarou critiques Guerette's "brief" analysis, contests that Preston's urinary incontinence is the result of an overactive bladder, and counters that her symptoms are more likely caused by a neurogenic bladder disorder related to the collision. Id. Preston argues that Guerette's report "injected new facts and contentions in to this litigation—i.e., that Ms. Preston's urinary incontinence was specifically caused by an overactive bladder rather than any physical trauma she sustained in the collision." Id. at 12 (emphasis omitted). She argues that a plaintiff need not anticipate and prospectively address every possible expert opinion that the defendants will advance at trial, and the

11

Fourth Circuit has upheld the introduction of rebuttal experts on similar complex medical issues. See Good v. GAF Corp., 875 F.2d 315 (Table), 1989 WL 54017, at *3 (4th Cir. 1989) ("The decision to admit this testimony was based primarily on the trial court's belief that the complexity of the medical issues warranted the admission of this additional evidence.").

The court finds that Lazarou is not a rebuttal expert. Lazarou's does not directly contradict Guerette at any point in his expert report. He mentions that he reviewed Guerette's report, but he does not critique his methodology nor his conclusions. See Funderburk, 2019 WL 3406814, at *4. He does not address—much less attempt to disprove—Guerette's alternative diagnosis of "overactive bladder," or "OAB," despite what Preston argues in opposition. Accordingly, the court will **GRANT IN PART** Walmart's motion to strike as it pertains to Lazarou.

IV.    Conclusion

For these reasons, the court will **DENY IN PART** Walmart's motion to strike as to Dwyer, **TAKE UNDER ADVISEMENT IN PART** the motion as to Jay, and **GRANT IN PART** the motion as to Lazarou. An appropriate order will be entered.

It is so **ORDERED**.

Entered:    April 7, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.04.07 13:09:52
-04'00'

Michael F. Urbanski
Chief United States District Judge